UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATIONAL PRODUCTS INC., | CASE NO. 2:25-cv-00666-DGE |
| Plaintiff, | |
| v. | ORDER ON MOTION TO FILE UNDER SEAL (DKT. NO. 37) |
| PIONEER SQUARE BRANDS INC., | |
| Defendant. | |

## I     INTRODUCTION

This matter comes before the Court on Plaintiff's unopposed motion to file under seal pursuant to Local Civil Rule 5(g).  (Dkt. No. 37.)  In its motion, Plaintiff seeks to maintain under seal certain unredacted documents related to Defendant's motion to dismiss for improper venue, pursuant to the terms of the Parties' stipulated protective order.  (Dkt. Nos. 37 at 2; 31 at 2.)  Because the documents Plaintiff sought to keep sealed contained *Defendant's* allegedly confidential information, Defendant confirmed it would provide a legal basis for maintaining the exhibits under seal but had not done so when this matter came to the Court's attention.  (Dkt. No.

37 at 3–4.)  The Court expressed some skepticism that the entirety of the information Defendant intended to keep sealed fell under the umbrella of "confidential business information" related to Defendant's company.  (Dkt. No. 43 at 4.)  Accordingly, the Court ordered Defendant to show cause explaining the basis and justification for sealing each of the documents identified and/or why specific redactions in a document were necessary for the Court to consider the motion.  (Dkt. No. 43.)  Defendant responded on November 4, 2025.  (Dkt. No. 46.)

## II    BACKGROUND

Plaintiff seeks to maintain under seal unredacted copies of (1) Plaintiff's response in opposition to Defendant's motion to dismiss for improper venue and (2) Exhibits A, E, H, K, and V–Z to the declaration of Jonathan G. Tamimi in support of its opposition brief.  (Dkt. No. 37 at 2.)  Plaintiff states it takes "no position on whether the information contained in the Sealed Documents warrant[s] confidential treatment."  (*Id.* at 3.)  Rather, because Defendant designated certain documents and information related to its motion to dismiss as "confidential" or "attorneys' eyes only," Plaintiff was required to file this motion to "comply with its obligations under the Stipulated Protective Order."  (*Id.* at 3–4.)

In its response to the Court's order (*see* Dkt. No. 43), Defendant states the information it seeks to seal relates to its "internal business operations" or its' employees' "personal finance information."  (Dkt. No. 46 at 1.)  Defendant's position is that disclosure of its business information could be used by its competitors to Defendant's "disadvantages" and that disclosure of personal information could be "used against that person's interests."  (*Id.* at 1–2.)  In support of its arguments, Defendant offers the Declaration of Megan R. Wood, which includes copies of Plaintiff's opposition brief and Exhibits A and H with "fewer redactions" as what was submitted by Plaintiff in the unopposed motion.  (Dkt. No. 47.)  The Court considered those alterations in

1    its decisions regarding sealing in this order.  Because Plaintiff's opposition brief references the

2    various exhibits discussed below, the Court will first determine if Defendant has identified

3    compelling reasons for sealing each exhibit, and then apply those determinations to the contents

4    of the opposition brief.

5                                    **III        DISCUSSION**

6        **A.  Legal Standard**

7            "Historically, courts have recognized a general right to inspect and copy public records

8    and documents, including judicial records and documents."  *See Kamakana v. City and Cnty. of*

9    *Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (internal quotations omitted).  Although "access

10   to judicial records is not absolute," there is a "strong presumption in favor of access."  *Id.*  "The

11   presumption of access is based on the need for federal courts, although independent—indeed,

12   particularly because they are independent—to have a measure of accountability and for the

13   public to have confidence in the administration of justice."  *Ctr. for Auto Safety v. Chrysler Grp.*,

14   *LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (internal quotations omitted).  Accordingly, "a party

15   seeking to seal a judicial record then bears the burden of overcoming this strong presumption by

16   meeting the 'compelling reasons' standard."  *Kamakana*, 447 F.3d at 1178 (citing *Foltz v. State*

17   *Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).  Under the compelling reasons

18   standard, "a court may seal records only when it finds 'a compelling reason and articulate[s] the

19   factual basis for its ruling, without relying on hypothesis or conjecture.'"  *Ctr. for Auto Safety*,

20   809 F.3d at 1096–1097 (quoting *Kamakana*, 447 F.3d at 1179).  "What constitutes 'compelling

21   reason' is 'best left to the sound discretion of the trial court.'"  *Id.* at 1097 (quoting *Nixon v.*

22   *Warner Commnc'ns, Inc.*, 435 U.S. 589, 599 (1978)).

23

24

The Ninth Circuit has recognized that "'compelling reasons' . . . exist when [] 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598).  Courts in this circuit have found compelling reasons for sealing documents that contain business and financial agreements.  *See, e.g., In re Apple Inc. Device Performance Litig.*, No. 5:18-MD-02827-EJD, 2019 WL 1767158, *2 (N.D. Cal. Apr. 22, 2019) ("Courts applying the compelling reasons standard have upheld the sealing of trade secrets, marketing strategies, product development plans, detailed product-specific financial information, customer information, internal reports and other such materials that could harm a party's competitive standing"); *Transperfect Glob., Inc. v. Motionpoint Corp.*, No. C 10–2590 CW, 2013 WL 209678, at *1 (N.D. Cal. Jan. 17, 2013) (granting motion to seal exhibits that contained proprietary information about the sealing party's internal business operations).

## B.  Exhibits

### 1.  Exhibit A: Armstrong Deposition Transcript

The information in Scott Armstrong's deposition that Defendant seeks to keep sealed can be broken into two categories: personal information related to Armstrong's investments and financial information, and information related to Brenthaven's[1] and Defendant's ownership, hiring practices, investments, acquisitions, and licensing.  Courts have found "compelling reasons to seal information about a . . . non-party's personal finances." *Shields v. Fed'n Internationale de Natation*, Case No. 18-cv-07393-JSC, 2022 WL 425359, at *16 (N.D. Cal. Feb. 11, 2022), *rev'd on other grounds*, *Shields v. World Aquatics*, Nos. 23-15092; 23-15156,

---

[1] Brenthaven is a "brand [Defendant] acquired in 2017."  (*See* Dkt. No. 46 at 3.)  It is a private company that uses similar "hiring practices" to Defendant.  (*Id.*)

1   2024 WL 4211477 (9th Cir. Sept. 17, 2024). Motions to seal personal documents are often

2   related to identity and personal financial account information and the "compelling reasons" turn

3   on privacy interests and the prevention of identity theft. *See Lin v. Suavei, Inc.*, Case No.: 3:20-

4   cv-0862-L-AHG, 2023 WL 7501403, at *2 (S.D. Cal. Nov. 13, 2023). Here, Defendant desires

5   to keep the information related to Armstrong's "personal investment strategy and assets [and]

6   financial information" confidential. (Dkt. No. 46 at 4.) On the Court's review, this information

7   seems less pertinent to Armstrong's personal financial privacy and more related to the events that

8   led to the formation of Defendant's company, which nonetheless warrants sealing. *See Jones v.*

9   *PGA Tour*, Case No. 22-cv-04486-BLF, 2023 WL 6545413, at *4 (N.D. Cal. Oct. 5, 2023)

10  (sealing a portion of a document that contained information about the formation of LIV Golf).

11  The Court also agrees with Defendant that the information related to Armstrong's (and a former

12  colleague's) ownership interest in various companies should be maintained under seal. *See*

13  *Fordemwalt ex rel. Baseline, Inc. v. HydroPoint Data Sys., Inc.*, Case No. 1:22-cv-00395-BLW,

14  2023 WL 2868571, at *9 (D. Idaho Apr. 9, 2023) (sealing a document that includes the

15  percentage of company ownership held by third parties, because "members of the public could

16  potentially extrapolate third parties' personal, financial information from such a document").

17      As to the information related to Brenthaven and Defendant's business interests, "[a]

18  privately held business's need for confidentiality with respect to sensitive business information is

19  a compelling reason justifying sealing." *ImprimisRx, LLC v. OSRX, Inc.*, Case No. 21-cv-01305-

20  BAS-DDL, 2024 WL 1269474, at *2 (S.D. Cal. Mar. 25, 2024); *see also Nat'l Prods., Inc. v.*

21  *Aqua Box Prods.*, LLC, Case No. C12-605 RSM, 2012 WL 12106901, at *1 (W.D. Wash. Mar.

22  25, 2013) (agreeing that a private company's financial information is "kept strictly private in

23  order to preserve its competitive position with sellers of similar products"). Information related

24

1    to a party's business operations, corporate structure, and how the company "works with and

2    licenses products to its customers" has been treated as proprietary business information that

3    warrants sealing.  *Selling Source, LLC v. Red River Ventures, LLC*, No. 2:09–cv–01491–JCM–

4    GWF, 2011 WL 1630338, at *2 (D. Nev. Apr. 29, 2011).  Courts have also sealed information

5    related to a company's hiring process and techniques.  *Heath v. Google Inc.*, Case No. 15-cv-

6    01824-BLF, 2017 WL 3530593, at *2–3 (N.D. Cal. Aug. 14, 2017).

7           Here, Defendant seeks to keep sealed information related to Brenthaven and Defendant's

8    hiring practices, ownership, formation, and licensing.  (Dkt. No. 46 at 4–5.)  Defendant argues

9    revealing this information could cause it competitive harm because competitor companies could

10   use Defendant's hiring practices, expansion or operational strategies, or royalty rates.  (*Id.*)

11   Upon reviewing the documents, the Court generally finds compelling reasons for sealing most of

12   the information requested by Defendants because it relates to "sensitive business information."

13   *ImprimisRx*, 2024 WL 1269474, at *2.  However, the Court finds that some of the sealing

14   requests are not supported by a compelling reason or are not narrowly tailored.  *See* LCR

15   5(g)(3)(A).  The Court therefore GRANTS in part and DENIES in part the motion to seal Exhibit

16   A (Dkt. No. 40-1) as follows:

| Portion Currently Under Seal[2] | Result | Reasoning |
|---|---|---|
| Page 11, lines 3–13; Page 12, line 3–Page 13, line 10; Page 16, lines 18–19. | GRANTED | Contains confidential information about the formation, ownership, and acquisition of private companies giving rise to the creation of Defendant's company. |
| Page 13, line 20–Page 14, line 14. | GRANTED | Contains confidential information about Armstrong's percentage of ownership |

---

[2] Defendant identifies the page numbers in Exhibits A, E, and H according to the deposition page numbers.  (*See generally* Dkt. No. 46.)  These numbers do not correspond to the ECF page numbers.  For ease of reference, the Court refers to the ECF page numbers in its rulings on the motion to seal Exhibits A, E, and H (Dkt. Nos. 40-1; 40-5; 40-8).

| | | interest in various companies that gave rise to Defendant's company. |
|---|---|---|
| Page 19, lines 17–22. | GRANTED | Contains confidential information about hiring practices of Brenthaven and the financial basis for those practices. |
| Page 32, line 10–Page 33, line 24. | DENIED | The Court is uncertain how the employee headcount of Defendant and a subsidiary entity qualifies as proprietary business information; Defendant does not provide support for its contention that this information could cause Defendant competitive harm if used by a competitor company. |
| Page 21, line 11–Page 22, line 25; Page 23, lines 2–7; Page 33, line 25–Page 34, line 18; Page 36, lines 2–6. | GRANTED | Contains confidential information about private company ownership and percentage of company ownership held by third parties. |
| Page 23, line 8–Page 25, line 8; Page 30, line 23–Page 32, line 9; Page 34, lines 1–18.[3] | GRANTED | Contains sensitive information related to Defendant's corporate structure, business operations and acquisitions, and related strategy. |
| Page 30, lines 10–15. | GRANTED | Contains information related to licensing and royalties of a patent acquired by Defendant. |

### 2.   Exhibit E: Ferren Deposition Transcript

Defendant requests the Court seal portions of Michael Ferren's deposition transcript that relate to financial incentives, company ownership and acquisitions, product development processes, and hiring practices.  (*See* Dkt. No. 46 at 5–6.)  Courts often seal information that includes "product development plans" and "product-specific financial information." *Flextronics Int'l USA, Inc. v. Murata Mfg. Co.*, Case No. 5:19-cv-00078-EJD, 2020 WL 14032219, at *1 (N.D. Cal. Dec. 16, 2020) (citing *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir 2008) and collecting cases).  The Court concludes that many of the same compelling reasons related to

---

[3] Defendant requests that "page 61, line 25" be maintained under seal, but does not include that page in the attached exhibit.  (*See* Dkt. No. 40-1 at 33–34.)  Because the Court cannot consider Defendant's request, it DENIES the motion to seal Dkt. No. 40-1 at "page 61, line 25."

"sensitive business information" as in Armstrong's deposition justify sealing portions of Ferren's

deposition. *ImprimisRx*, 2024 WL 1269474, at *2. However, the Court finds that some of the

sealing requests are not supported by a compelling reason or are not narrowly tailored. *See* LCR

5(g)(3)(A). The Court therefore GRANTS in part and DENIES in part the motion to seal Exhibit

E (Dkt. No. 40-5) as follows:

| Portion Currently Under Seal | Result | Reasoning |
|---|---|---|
| Page 6, lines 17–21; Page 20, lines 22–25. | GRANTED | Contains confidential information related to certain incentives Defendant provides some of its employees. *See* Section III(B)(5) *infra*. |
| Page 15, lines 15–20. | GRANTED | Contains confidential information about private company ownership and percentage of company ownership held by third parties. |
| Page 24, line 12–Page 25, line 12. | GRANTED | Contains sensitive information related to Defendant's acquisition of Vault and the strategic reasons underlying the acquisition. |
| Page 25, line 14–Page 26, line 25. | GRANTED | Contains proprietary information related to Defendant's product development process. |
| Page 29, lines 2–20. | DENIED | The Court is uncertain how the employee headcount of Defendant's company qualifies as proprietary business information. Similar to the Court's ruling in Section III(B)(1) *supra*, Defendant does not provide support for its contention that this information could cause Defendant competitive harm if used by a competitor company. |

### 3. Exhibit H: Matsumura Deposition Transcript

Defendant requests the Court seal portions of Marc Matsumura's deposition transcript

that relate to Defendant's acquisitions, ownership, hiring practices, tax and financial information,

and financial incentives. (Dkt. No. 46 at 6–7.) It also seeks to seal information related to the

terms and conditions of Matsumura's employment with Defendant. (*Id.* at 6.) Other courts have

1   found compelling reasons to keep tax returns and other tax information confidential.  *See Petitt v.*

2   *Exigency Healthcare Servs., LLC*, Case No. 21-cv-07639-VKD, 2023 WL 2940181, at *1 (N.D.

3   Cal. Mar. 10, 2023) (sealing materials that include "extensive" confidential information,

4   including tax statements and "supporting profit/loss documentation"); *Henning v. Arya*, Case No.

5   2:14-cv-00979-RFB-NJK, 2023 WL 6392747, at *7 (D. Nev. Sept. 30, 2023) (granting motion to

6   seal company tax returns).  Many of the same compelling reasons underlying the Court's rulings

7   on the motions to seal portions of Armstrong's and Ferrens's depositions apply here.  However,

8   the Court finds that some of the sealing requests are not supported by a compelling reason or are

9   not narrowly tailored.  *See* LCR 5(g)(3)(A).  The Court therefore GRANTS in part and DENIES

10  in part the motion to seal Exhibit H (Dkt. No. 40-8) as follows:

| Portion Currently Under Seal | Result | Reasoning |
|---|---|---|
| Page 12, line 22–Page 13, line 24. | GRANTED | Contains confidential information about ownership of Defendant's company and percentage of company ownership held by third parties. |
| Page 15, lines 9–11. | DENIED | The Court is uncertain how the employee headcount of a subsidiary entity to Defendant qualifies as proprietary business information; Defendant does not provide support for its contention that this information could cause Defendant competitive harm if used by a competitor company. |
| Page 15, lines 12–13; Page 16, lines 4–19. | GRANTED | Contains confidential information related to formation of subsidiary entity and the company strategy underlying the formation. |
| Page 26, lines 9–25. | GRANTED | Contains confidential information about the terms and conditions of Matsumura's employment with Defendant.  *See* Section III(B)(4) *infra*. |
| Page 29, line 2–Page 30, line 25. | GRANTED | Contains confidential information related to Defendant's tax returns. |

| Page 41, lines 4–25. | GRANTED | Contains confidential information related to certain incentives Defendant provides some of its employees. *See* Section III(B)(5) *infra*. |
| --- | --- | --- |

### 4. Exhibits K and X–Z: Internal Employment Documents

There are some instances where an employee handbook could contain confidential information that could harm the company's competitive standing if disclosed. *See, e.g.*, *HSBC Bank USA, Nat'l Ass'n v. Chi. Title Ins. Co.*, Case No. 2:18-cv-02162-MMD-DJA, 2023 WL 6723619, at *2 (D. Nev. Oct. 11, 2023) (handbook included "guidance on how to handle claims properly and efficiently" that reflected the "impressions and analysis" of the defendant's counsel). Revealing sensitive information in a handbook related to "employee benefits and compensation" could also prejudice the employer and harm its competitive standing. *W. Air Charter, Inc. v. Schembari*, Case No. EDCV 17-420 JGB (KSx), 2018 WL 10157139, at *21 (C.D. Cal. Nov. 21, 2018). But here, the excerpts of the employee handbook Defendant seek to keep sealed relate only to communication systems, technology, and its remote work policy. (*See* Dkt. No. 40-11 at 4–5.) Defendant states only that Exhibit K "includes information about the terms and conditions" of employment and its disclosure could harm Defendant because competitors could "leverage that information to get [Defendant]'s employees to leave." (Dkt. No. 46 at 3, 7.) The Court struggles to see how revealing this sort of information would harm Defendant's competitive standing, and Defendant has not put forth a compelling reason for keeping these particular boilerplate policies confidential. *See E. W. Bank v. Shanker*, Case No. 20-cv-07364-WHO, 2021 WL 4916729, at *1 (N.D. Cal. Aug. 31, 2021) (denying motion to seal employer's dispute resolution policy when the policy only included "common aspects" of arbitration agreements and the employer did not explain how it would be harmed competitively if

the policy was disclosed).  The Court thus DENIES the request to seal Exhibit K (Dkt. No. 40-11).

Courts in the Ninth Circuit have recognized that employment contracts and personnel files of non-party employees should be kept under seal.  *Aevoe Corp. v. AE Tech. Co.*, No. 2:12–cv–00053–GMN–NJK, 2013 WL 5923426, at *2 (D. Nev. Nov. 1, 2013) (citing *TriQuint Semiconductor, Inc. v. Avago Techs., Ltd.*, No. CV 09–1531–PHX–JAT, 2011 WL 4947343, at *3 (D. Ariz. Oct. 18, 2011), *on reconsideration,* 2011 WL 5190264 (D. Ariz. Nov. 1, 2011). This is because non-party employees have a "strong interest" in keeping their personnel files private, and typically, the interests in privacy outweigh the public's interest in accessing these sorts of documents.  *Id.* (citation omitted).  Here, Defendant states Exhibits X, Y, and Z are the "employment agreements" of Matsumura, Ferren, and Armstrong, and argues these exhibits contain "information about the terms and conditions of [Defendant]'s employment." (Dkt. No. 46 at 7.)  The Court agrees that compelling reasons exists for sealing these exhibits in the interests of protecting the non-party employees' privacy and GRANTS the motion to seal as to Exhibits X, Y, and Z (Dkt. Nos. 40-24; 40-25; 40-26).

### 5.  Exhibits V and W: Internal Financial Documents

Courts have granted a motion to seal documents that contain information about the employer's "incentive programs," the disclosure of which "could undermine [the defendant company's] ability to attract and retain employees and thus harm its competitive standing." *Carlson v. Home Depot USA Inc.*, Case No. C20-1150 MJP, 2021 WL 3367157, at *1 (W.D. Wash. Aug. 3, 2021).  Defendant here states Exhibits V and W "include information about incentives, including financial incentives," that Defendant provides some of its employees.  (Dkt. No. 46 at 7.)  The concern, according to Defendant, is that disclosing this information could

1    cause competitive harm because competitors could attempt to persuade employees to leave by

2    offering "purportedly better incentives." (*Id.* at 3.)  On the Court's review, Exhibits V and W

3    appear to contain information related to technology benefits and reimbursements provided to

4    various employees. (*See* Dkt. Nos. 40-22; 40-23.)  While these documents do not contain the

5    type of compensation-type data that is often at issue in similar motions to seal, *see Monster*

6    *Energy Co. v. Vital Pharms., Inc.*, Case No. EDCV 18-1882 JGB (SHKx), 2022 WL 17222293,

7    at *2 (C.D. Cal. Oct. 26, 2022) (discussing motions to seal employee salary and benefits data and

8    collecting cases), the Court concludes that the information could hurt Defendant's competitive

9    standing by allowing competitors to know what kind of technology benefits and reimbursements

10   Defendant offers employees.  Further, these documents are minimally referenced in Plaintiff's

11   opposition brief; therefore, their exclusion does not appear to deprive the public of an ability to

12   understand the overarching issues presented in the motion to dismiss and related briefing. *See*

13   *Carlson*, 2021 WL 3367157, at *1.  The Court GRANTS the motion to seal Exhibits V and W

14   (Dkt. Nos. 40-22; 40-23).

15        **C.  Plaintiff's Opposition Brief**

16        Defendant states various parts of Plaintiff's opposition brief include "confidential

17   business information," including financial incentives that Defendant provides certain employees,

18   hiring practices and terms of employment, the acquisition of another company, and Defendant's

19   ownership. (Dkt. No. 46 at 3.)  "'[S]ources of business information that might harm a litigant's

20   competitive standing' often warrant protection under seal." *Kimera Labs Inc. v. Exocel Bio Inc.*,

21   Case No.: 21-cv-2137-MMA-DDL, 2024 WL 3014639, at *1 (S.D. Cal. June 14, 2024) (citation

22   omitted).  The Court agrees that there is a compelling reason to justify sealing most of the

23   information contained in Plaintiff's opposition brief.  Based on the foregoing rulings, the Court

24

GRANTS in part and DENIES in part the motion to seal Plaintiff's opposition brief (Dkt. No. 39):

| Portion Currently Under Seal[4] | Result | Reasoning |
| --- | --- | --- |
| Page 2, lines 15–16; Page 15, lines 11–18; Page 24, lines 26–27. | GRANTED | Contains confidential information related to certain incentives Defendant provides some of its employees. |
| Page 2, lines 16–17; Page 10, lines 11–19; Page 15, lines 22–26. | GRANTED | Contains confidential information related to Defendant's corporate structure, business operations and acquisitions, hiring practices, the financial basis for those practices, and related strategy. |
| Page 13, lines 6–8; Page 23, lines 13–15 and lines 23–25; Page 9, line 5. | DENIED | The Court is uncertain how the employee headcount of Defendant's company or precursor company qualifies as proprietary business information. Defendant does not provide support for its contention that this information could cause Defendant competitive harm if used by a competitor company. |
| Page 2, lines 17–18; Page 16, lines 9–10; Page 16, lines 14–21; Page 22, lines 19–21; Page 23, lines 23–25. | DENIED | The Court is uncertain how revealing Defendant's technology, communications, and remote work policy could cause Defendant competitive harm. Defendant does not provide support for its contention that competitors would leverage this information to induce Defendant's employees to leave the company. |
| Page 9, line 3–4; Page 9, line 10–11; Page 10, lines 4–5; Page 15, line 4. | GRANTED | Contains confidential information about private company ownership and percentage of company ownership held by third parties. |

---

[4] Defendant identifies the page numbers in the opposition brief according to the document page numbers. (*See generally* Dkt. No. 46.) These numbers do not correspond to the ECF page numbers. For ease of reference, the Court refers to the ECF page numbers in its rulings on the motion to seal the opposition brief (Dkt. No. 39).

# IV     CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiff's unopposed motion to file under seal (Dkt. No. 37) as follows:

- Exhibit A (Dkt. No. 40-1):
  - GRANTED as to Page 11, lines 3–13; Page 12, line 3–Page 13, line 10; Page 13, line 20–Page 14, line 14; Page 16, lines 18–19; Page 19, lines 17–22; Page 21, line 11–Page 22, line 25; Page 23, lines 2–7; Page 23, line 8–Page 25, line 8; Page 30, lines 10–15; Page 30, line 23–Page 32, line 9; Page 33, line 25–Page 34, line 18; Page 34, lines 1–18; Page 36, lines 2–6.
  - DENIED as to Page 32, line 10–Page 33, line 24.
- Exhibit E (Dkt. No. 40-5):
  - GRANTED as to Page 6, lines 17–21; Page 15, lines 15–20; Page 20, lines 22–25; Page 24, line 12–Page 25, line 12; Page 25, line 14–Page 26, line 25.
  - DENIED as to Page 29, lines 2–20.
- Exhibit H (Dkt. No. 40-8):
  - GRANTED as to Page 12, line 22–Page 13, line 24; Page 15, lines 12–13; Page 16, lines 4–19; Page 26, lines 9–25; Page 29, line 2–Page 30, line 25; Page 41, lines 4–25.
  - DENIED as to Page 15, lines 9–11.
- Exhibit K (Dkt. No. 40-11): DENIED.
- Exhibits X–Z (Dkt. Nos. 40-24; 40-25; 40-26): GRANTED.
- Exhibits V and W (Dkt. Nos. 40-22; 40-23): GRANTED.
- Opposition Brief (Dkt. No 39):

- GRANTED as to Page 2, lines 15–16; Page 2, lines 16–17; Page 9, line 3–4; Page 9, line 10–11; Page 10, lines 4–5; Page 10, lines 11–19; Page 15, line 4; Page 15, lines 11–18; Page 15, lines 22–26; Page 24, lines 26–27.

- DENIED as to Page 2, lines 17–18; Page 9, line 5; Page 13, lines 6–8; Page 16, lines 9–10; Page 16, lines 14–21; Page 22, lines 19–21; Page 23, lines 13–15; Page 23, lines 23–25.

In conclusion, the Court ORDERS Plaintiff to file the following:

- A new version of Plaintiff's response in opposition to the motion to dismiss (Dkt. No. 39) with redactions made in accordance with this order and reflecting the alterations to the redactions identified by Defendant in Dkt. No. 47; and

- A new version of the Declaration of Jonathan G. Tamimi in support of Plaintiff's response (Dkt. No. 40), with redactions made to Exhibits A and H (Dkt. Nos. 40-1; 40-8) made in accordance with this order and reflecting the alterations to the redactions identified by Defendant in Dkt. No. 47.

Plaintiff SHALL file the new redacted versions by **December 24, 2025**.  The current redacted versions (Dkt. Nos. 41; 42) will remain on the docket for purposes of maintaining a record but will no longer be considered by the Court in its decision on Defendant's motion to dismiss for improper venue (Dkt. No. 22).


Dated this 17 day of December 2025.


David G. Estudillo
United States District Judge